UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MARK NIX,                              )
                                       )
      Petitioner,                  )
                                       )        Nos.  3:17-CV-214-TAV-DCP
v.                                     )               3:15-CR-36-TAV-DCP
                                       )
UNITED STATES OF AMERICA,              )
                                       )
      Respondent.                  )


## REPORT AND RECOMMENDATION

United States District Judge Thomas A. Varlan has referred [Doc. 14] this matter to the undersigned for a report and recommendation regarding disposition of Petitioner's claim that his former counsel failed to file a requested appeal or failed to make a reasonable effort to discover Petitioner's desire to file an appeal.[1]  The undersigned conducted an evidentiary hearing on June 8, 2022.  Assistant United States Attorney Tracy Stone ("AUSA Stone") appeared on behalf of the Government.  Attorney Gerald Gulley, Jr., ("Attorney Gulley") appeared on behalf of Petitioner, who was also present.  For the reasons set forth herein, the Court **RECOMMENDS** that the District Judge **DENY** the sole remaining claim in Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 Petition" or "Petition") [**Doc. 1**].

## I.      BACKGROUND

On March 4, 2015, a federal grand jury filed a seven-count indictment charging Petitioner with money laundering, conspiracy to distribute oxycodone, possession with intent to distribute oxycodone, and three counts of oxycodone distribution.  *United States v. Nix*, No. 3:15-cr-36 [Doc.

---

[1] Unless otherwise indicated, all citations to the record are found on the docket of Case No. 3:17-CV-214.

3].[2]  On April 27, 2015, Petitioner appeared before the Court for his initial appearance/arraignment, and the Court appointed Attorney Loretta Cravens on his behalf.  *United States v. Nix*, No. 3:15-cr-36 [Docs. 29 & 31].

On December 4, 2015, Petitioner and Attorney Cravens signed a Plea Agreement, whereby Petitioner agreed to plead guilty to Count One in the indictment, which charged conspiracy to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of oxycodone, a Scheduled II controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C).  *United States v. Nix*, No. 3:15-cr-36 [Doc. 53 ¶ 1].  Paragraph 10 of the Plea Agreement provides, in relevant part, as follows:

> 10. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:
>
> a) The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater.  The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.
>
> b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's

---

[2]  During the June 8 evidentiary hearing, Petitioner requested that the Court take judicial notice of the records filed in the underlying criminal proceeding.  The Government noted that Petitioner's criminal case is "certainly connected" to the instant matter.  "It is well established that a court can take judicial notice of its own files and records under Rule 201 of the Federal Rules of Evidence."  *ZMC Pharmacy, LLC v. State Farm Mut. Auto. Ins. Co.*, 307 F. Supp. 3d 661, 665 (E.D. Mich. 2018) (quoting *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015)).

2

conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

[*Id*. ¶ 10].

Petitioner proceeded before Judge Varlan on December 21, 2015, for his change of plea hearing [Doc. 22-1].[3] During the change of plea hearing, Judge Varlan asked whether Petitioner understood paragraph 10 of the Plea Agreement [*Id*. at 12–13]. The following exchange occurred:

> The Court: All right. Let's look now at your plea agreement. You understand paragraph ten in your plea agreement contained in provisions [sic] under which you are waiving the right to appeal or collaterally attack your sentence?
>
> The Witness: I do.
>
> The Court: Paragraph 10A provides that you agree not to file a direct appeal of your conviction or sentence. Do you understand that?
>
> The Witness: I'm sorry. I didn't hear that one.
>
> The Court: Okay. I'm, I'm looking at paragraph ten now and you can reference the plea agreement or just listen, but we established that your understanding that your plea agreement contained waiver provisions and I'm breaking that down now into several parts. First, paragraph 10A provides that you agree not to file any direct appeal here of your conviction or sentence. Do you understand that?
>
> The Witness: Yes.
>
> The Court: And do you understand the only exception to this waiver of direct appeal is that you retain the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or by the mandatory minimum sentence deemed applicable by the Court, whichever is greater?

---

[3] During the June 8 evidentiary hearing, the parties noted that the court reporter had not transcribed Petitioner's change of plea hearing conducted on December 21, 2015. The Government offered to file the transcript as a late-filed exhibit to the evidentiary hearing, and Attorney Gulley agreed that the change of plea hearing would assist the Court in rendering its recommendation. The Government filed the change of plea hearing transcript on July 20, 2022, as [Doc. 22-1].

3

The Witness: I do.

The Court: And as part of this waiver, do you understand that you waive the right to appeal the Court's determination as to whether your sentence will be consecutive or partially concurrent to any other sentence?

The Witness: Oh, yes.

The Court: All right. Next paragraph 10B provides that you knowingly and voluntarily waive the right to file any motions or pleadings pursuant to 28 United States code section 2255 or to collaterally attack your conviction or resulting sentence?

The Witness: I do.

The Court: And do you understand the only exception to this waiver is you retain the right to raise by way of collateral review under section 2255 claims of . . . [in]effective assistance of counsel or prosecutorial misconduct?

The Witness: I do.

[*Id.*]. After the Court explained the impact of Petitioner pleading guilty, Petitioner testified that he still wished to plead guilty in his case [*Id.* at 24].

On May 9, 2016, the parties executed an Amended Plea Agreement. *United States v. Nix*, No. 3:15-cr-36 [Doc. 76]. The Amended Plea Agreement is a copy of the original Plea Agreement with handwritten language that the parties added and initialed on May 9, 2016, stating Petitioner's base offense level was 34 based on the circumstances of the case [*Id.* at 2]. The Court sentenced Petitioner on May 9, 2016. *United States v. Nix*, No. 3:15-cr-36 [Doc. 92]. Attorney Cravens filed several objections to the Presentence Investigation Report ("Presentence Report"), but during the sentencing hearing, Attorney Cravens announced to the Court, "[Petitioner] has reviewed the [A]mended [P]lea [A]greement and in exchange for that recommended sentence of 198 months [Petitioner] is prepared to withdraw his objections to the Presentence Report." [*Id.* at 4]. Petitioner testified that he had ample opportunity to discuss the Amended Plea Agreement with Attorney

Cravens [*Id*. at 5]. Petitioner told the Court that he had no questions about his plea and that he was entering the Amended Plea Agreement voluntarily [*Id*. at 6, 7]. Petitioner further testified that he agreed to withdraw his objections to the Presentence Report [*Id*. at 7]. Judge Varlan specifically reviewed with Petitioner that his withdrawal of objections to the Presentence Report meant that "[Petitioner is] determined to be a career offender for sentencing calculation purposes," and when Judge Varlan asked if he understood, Petitioner replied "Yes, sir." [*Id.* at 14–15].

Judge Varlan explained to Petitioner that the Presentence Report stated his guideline range was 235 months to 240 months, but because of the Amended Plea Agreement, the new guideline range was 188 months to 235 months [*Id*. at 10]. Petitioner testified that he understood, and Judge Varlan asked if he needed more time to discuss the guidelines ranges with Attorney Cravens [*Id*.]. Petitioner responded, "No. I think we have pretty much got everything figured out" [*Id*.]. The parties agreed that 198 months would be an appropriate sentence for Petitioner [*Id*. at 11–12]. The Court sentenced Petitioner for a term of imprisonment of 198 months [*Id*. at 28]. Judge Varlan concluded the sentencing hearing as follows:

> The plea agreement in this case is accepted. Counts 2 through 7 are dismissed.
>
> Pursuant to Rule 32 of the Federal Rules of Criminal Procedure, the Court advises you may have the right to appeal the sentence imposed in this case.
>
> Notice of appeal must be filed within 14 days of entry of judgment. If you request and so desire, the clerk of court can prepare and file a notice of appeal.

[*Id*. at 31].

On May 17, 2017, Petitioner filed his § 2255 Petition asserting two issues (1) whether his right to effective assistance of counsel was violated at sentencing when counsel failed to make meritorious arguments demonstrating that the Career Offender enhancement under U.S.S.G. §

4B1.1 did not apply to Petitioner, and (2) whether Petitioner's right to effective assistance of counsel was violated on direct appeal when counsel failed to consult with Petitioner concerning his right to appeal; failed to make a reasonable effort to discover Petitioner's desire to appeal; and failed to file a notice of appeal [Doc. 1]. The Court ordered the Government to respond to the Petition given that it was not plain on its face that it should be summarily denied [Doc. 2]. The Government responded that Petitioner failed to demonstrate that his counsel was ineffective for not objecting to his career-offender status and that Petitioner had not established that counsel was ineffective for not filing an appeal [Doc. 3 pp. 4–8]. In reply, Petitioner maintained that his right to effective assistance of counsel was violated at sentencing when counsel failed to appropriately object to the application of the career offender sentencing enhancement in his case [Doc. 4 pp. 2-4]. Petitioner also maintained that his right to effective assistance of counsel was violated because he had expressed to his attorney a desire to appeal and other facts existed at the time of sentencing demonstrating he was interested in filing an appeal. [*Id*. at 5–9]. As part of his reply and in further support of his arguments, Petitioner filed an Affidavit, stating, in relevant part, as follows:

> (4) After sentencing, I wanted to appeal the 198 month sentence and I told my attorney that I wanted to app[e]al. Counsel never told me that I had a right to appeal or that a notice of appeal had to be filed so that I could appeal. Instead, counsel told me that I could not appeal and she never filed a notice of appeal.

> (5) Had my attorney told me that in order to appeal a notice of appeal had to be filed within 14 days after sentencing, I would have instructed my attorney to file a notice of appeal.

[*Id*. at 10].

On August 25, 2020, the Court entered a Memorandum Opinion denying Petitioner's § 2255 Petition and finding an evidentiary hearing was not necessary [Doc. 8]. On the first issue, the Court found that Petitioner had failed to overcome the presumption that counsel provided effective assistance [*Id*. at 4]. The Court made similar findings with respect to the second issue

[*Id*. at 7–11].  The Court reasoned that Petitioner signed an Amended Plea Agreement, "waiving his direct appeal rights with the exception of appealing a sentence above the guideline range or mandatory minimum" [*Id*. at 9 (citing Doc. 76 ¶ 10(a))].  The Court noted that it had executed a plea colloquy addressing the considerations set forth in Federal Rule of Criminal Procedure 11; it asked Petitioner to acknowledge each waiver individually to ensure that Petitioner understood each component and its exceptions; and therefore, Petitioner knowingly, intelligently, and voluntarily waived his appellate rights [*Id*. at 10].  The Court also found that the detailed colloquy at the change of plea hearing acted as a substitute for counsel's duty to consult [*Id*. (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 479 (2000))].

The Court further found that even if the plea agreement was not a substitute, Petitioner's argument still fails as no duty to consult was triggered because there were no nonfrivolous grounds on which he could appeal and he failed to show prejudice since any appeal would be dismissed pursuant to his waiver [*Id*. at 10–11].  Finally, the Court noted that Petitioner only states that his counsel advised him that he could not appeal.  The Court stated that even if the duty to consult was triggered, "Petitioner did not request an appeal regarding an issue within the waiver exception, his only available claim on direct appeal, [and therefore,] there is no other substance regarding direct appeal about which counsel could consult" [*Id*. at 11].  The Court entered its Judgment denying the § 2255 Petition on the same day [Doc. 9].

Petitioner appealed the Court's Memorandum Opinion to the Sixth Circuit Court of Appeals [Doc. 10].  On May 13, 2021, the Sixth Circuit declined to issue a certificate of appealability as to the first issue finding, "Reasonable jurists would not debate the district court's rejection of [Petitioner's] first ineffective-assistance-of-trial-counsel claim for failing to object at sentencing to [Petitioner's] career-offender sentence enhancement" [Doc. 12 at 5].  The Sixth Circuit, however, granted a certificate of appealability on the second issue [*Id*. at 6].  The Court

7

noted that Petitioner had submitted an Affidavit stating that he told his attorney that he wanted to file an appeal and that the Government did not present any contrary evidence [*Id*. at 7]. The Court further explained, "Given the limited factual development, reasonable jurists might then debate whether counsel's statements to [Petitioner] satisfied this consultation requirement and, if not, whether [Petitioner] was prejudiced" [*Id*. at 7]. The Sixth Circuit also directed the Court to consider its finding of prejudice given that the Supreme Court found "prejudice is presumed when counsel does not file a notice of appeal despite the defendant's express instructions to so do . . . even if the defendant signed an appeal waiver" [*Id*. (citing *Garza v. Idaho*, 139 S. Ct. 738, 749–50 (2019))].

On March 15, 2022, the Sixth Circuit vacated the Court's Judgment in part and remanded the case for further proceedings on Petitioner's claim that counsel was ineffective for failing to file a notice of appeal as instructed or to consult with him regarding an appeal [Doc. 13 p. 5]. Specifically, the Sixth Circuit instructed the Court to conduct an evidentiary hearing to determine the truth of Petitioner's claim [*Id*. (internal quotations omitted)].

On April 5, 2022, Judge Varlan referred Petitioner's claim to the undersigned for appointment of counsel and to conduct the evidentiary hearing [Doc. 14]. On April 6, 2022, the undersigned appointed Attorney Gulley to represent Petitioner [Doc. 15]. The Court conducted the evidentiary hearing on June 8, 2022 [Doc. 16].

## II.    SUMMARY OF THE TESTIMONY

The following individuals testified during the evidentiary hearing on June 8, 2022: Petitioner, Marty Nix (Petitioner's brother), and Attorney Cravens. The Court will summarize their testimony below.

8

### A. Petitioner's Testimony

Petitioner testified that he is requesting habeas corpus relief, although he was not sure what "habeas corpus" meant. He testified that his lawyers in Kentucky filed the Petition on his behalf.[4] Petitioner testified that he was convicted of conspiracy to distribute oxycodone. Petitioner stated that he was charged in 2015 and that the State also charged him with similar crimes. At the time he was indicted in the federal case, he was serving time on the state charges.

Petitioner testified that Attorney Cravens was his trial counsel in his federal proceedings. He stated that his case did not go to trial because the Government presented a plea bargain on the day of the sentencing. Petitioner further stated that when he arrived for sentencing, he was presented with the plea bargain and that he did not understand why that occurred. Petitioner identified his signature on the Plea Agreement executed on December 4, 2015, and it was noted through further questioning that the Plea Agreement was amended on the day of sentencing as to the drug quantity, which resulted in a modification of the sentencing range from 240 to 198 months. Petitioner stated that he did not recall having any conversations with Attorney Cravens about filing an appeal between December 2015, when he signed the Plea Agreement, and his sentencing in May 2016, noting that he only met with her about two (2) times the entire year. Petitioner related that during the sentencing hearing, Attorney Cravens advised him that the Government offered 198 months and that she told Petitioner to take the offer because he was facing twenty (20) years. Although Petitioner stated that he had a difficult time remembering some specifics given that this occurred about six (6) years ago, he confirmed that the parties made an amendment to the Plea Agreement regarding the drug quantity, resulting in the reduction of the sentencing range from 240 to 198 months.

---

[4] Attorney Matthew Robinson, who is located in Kentucky, filed the Petition [Doc. 1].

Petitioner stated that he was sentenced by Judge Varlan. He noted that his brother and sister were in the courtroom during the sentencing hearing, seated behind defense counsel's table. Later in this testimony, Petitioner added that following the hearing, his family members were not allowed to talk to him. Petitioner testified that after Judge Varlan announced the sentence, he had a conversation with Attorney Cravens about an appeal. Petitioner stated that he told Attorney Cravens that he wanted to appeal, but she told him that he could not appeal because he had "signed [his] appeal rights away." Petitioner explained that based on what he had learned in the state courts, anything could be appealed all the way to the Supreme Court, and thus, he was dumbfounded by Attorney Cravens's statement.

Petitioner further explained that while he had been previously convicted in state court, this was his first experience in the federal criminal justice system. He testified that after Attorney Cravens stated that he could not appeal, he did not know what to do because he thought "everything had an appealability about it." When asked if he told Attorney Cravens that he wanted to appeal the judgment, Petitioner responded, "Yes, that was the first thing I told her. When we went back to our table and sat down that I said, 'I want to appeal this . . .'" Petitioner repeated that Attorney Cravens's reply to his statement was that he could not appeal because "[he] signed [his] appeal rights away." Petitioner testified that when he was speaking with Attorney Cravens at the counsel table concerning this matter, they were both speaking in a low voice.

Petitioner testified that if Attorney Cravens had told him he could appeal, he most certainly would have filed an appeal given the position he was in. Petitioner stated Attorney Cravens never told him the time for filing an appeal because she told him that he could not appeal. Petitioner stated he learned from "the jailhouse attorney" that he could appeal, and Petitioner began studying federal law to determine if he could appeal. At the end of his direct examination, Petitioner was asked to clarify that "[he] asked Ms. Cravens to file an appeal or that [he] wanted to appeal," and

he replied, "I most certainly did want to appeal and that's exactly what I told her." He then reiterated that Attorney Cravens responded that he could not appeal because he signed his appeal rights away.

In cross examination, AUSA Stone reviewed the original Plea Agreement with Petitioner. *See United States v. Nix*, No. 3:15-cr-36 [Doc. 53]. After reviewing paragraphs 10 and 10(a), Petitioner stated that he did not understand many of the words and does not remember reading those paragraphs before signing the Plea Agreement. Reflecting back to his change of plea hearing, Petitioner recalled Judge Varlan asking him if he understood what was being said, and Petitioner stated that he was trying to understand. Petitioner confirmed that he signed the Plea Agreement and that paragraph 10(a) states he will not file a direct appeal of his convictions or sentence with the one noted exception.

In breaking down the review of paragraph 10(a) into subparts, Petitioner agreed that his sentence ran concurrently with his state charges such that the last sentence of paragraph 10(a) was not applicable. AUSA Stone also reviewed with Petitioner that there was no statutory mandatory minimum in his case; however, Petitioner testified that the only thing he understood was that he was going to get twenty (20) years if he did not take the plea bargain. Next, AUSA Stone examined the remaining provision of paragraph 10(a) with Petitioner concerning the right to appeal a sentence above the sentencing guideline range as determined by the court. Petitioner acknowledged that his initial guideline range was 235 to 293 months as reflected in the Presentence Report, s*ee United States v. Nix*, No. 3:15-cr-36 [Doc. 68], but given the applicable statutory maximum of 20 years (or 240 months), the applicable guideline range was 235 to 240 months. Lastly, AUSA Stone reviewed with Petitioner that a lower guideline range was ultimately negotiated, resulting in the Amended Plea Agreement, *see United States v. Nix*, No. 3:15-cr-36 [Doc. 76], and joint sentencing recommendation to Judge Varlan for 198 months, which Judge

11

Varlan accepted. Petitioner testified that Attorney Cravens never went over that paragraph with him. He said that he cannot remember ever discussing with her that he could not appeal until after he was sentenced when she told him that he had signed his appellate rights away. Petitioner stated that he would have gone to trial if he knew that he could not appeal, noting that no one in their right mind would take 198 months for selling four (4) pills.

On redirect examination, Petitioner acknowledged that paragraphs 10 and 10(a) do not prohibit all appeals, but he thought he could have appealed everything. Petitioner repeated that he told Attorney Cravens that he wanted to file an appeal after the sentencing proceeding, and she refused to file the appeal.

On recross examination, Petitioner stated that he wanted to appeal the whole case, including the conviction and the sentence of 198 months. Petitioner stated that the plea agreement is a barter system, but when he arrived for sentencing, there was no bargaining: it was 198 months or 240 months. Petitioner stated that Attorney Cravens told him to accept the 198 months, and he wanted to appeal the length of his imprisonment.

Under further redirect examination, Petitioner stated that he did not know the bases for his appeal, and it took him a year to figure out that he could appeal.

### 2. Marty Nix's Testimony

On direct examination, Marty Nix ("Nix") testified that he is Petitioner's brother.[5] Nix testified that he was present during the sentencing. Nix was sitting behind Petitioner and his counsel. Nix stated that after the Court announced the sentence, Nix heard Petitioner and his counsel discuss matters. Nix stated that Petitioner sat down, and he told his counsel that he wanted

---

[5] Prior to Marty Nix testifying, AUSA Stone noted that Marty Nix had been present during Petitioner's testimony, although AUSA Stone acknowledged that he did not request the rule of sequestration pursuant to Federal Rule of Evidence 615.

to appeal this immediately. Attorney Cravens told Petitioner that he could not appeal, Petitioner had signed his rights away, and it was a done deal. Nix stated that Petitioner did not provide the grounds for his request for an appeal and that he just generally asked about an appeal, and Attorney Cravens said he could not appeal because it was a done deal.

AUSA Stone did not cross examine Nix.

### 3.      Attorney Craven's Testimony

On direct examination, Attorney Cravens testified that she remembers Petitioner. Attorney Cravens stated that on Monday (*i.e.*, June 6, 2022), AUSA Stone called her about the Sixth Circuit's decision in Petitioner's case, and he explained there were some questions about her and Petitioner's discussions. Attorney Cravens confirmed that she and AUSA Stone did not discuss the conversations between her and Petitioner and that she did not read Petitioner's § 2255 motion. She stated, however, that she did review the Amended Plea Agreement before testifying at the instant hearing. Attorney Cravens testified that the Plea Agreement was filed on December 7, 2015, but signed on December 4, 2015.

Attorney Cravens has practiced criminal law since 2004 and has practiced criminal law in federal court since at least 2006. This was not her first plea agreement that she negotiated in federal court. Attorney Cravens explained that it was her practice to go through the plea agreement with every client, and it remains her practice to read the entire plea agreement to her clients. Attorney Cravens testified that she read the entire Plea Agreement to Petitioner, including paragraph 10, but does not recall Petitioner asking any questions about paragraph 10(a). She is familiar with Judge Varlan's litany during the change of plea hearing and the questions that he reviews with defendants to ensure that plea agreements are voluntarily and knowingly made, including a review of the paragraph 10(a) appeal waiver.

Attorney Cravens stated that while she does not recall the specific nature of her objections to the Presentence Report, she does recall spending several hours preparing for a contested sentencing hearing due to the pending objections. She remembered negotiating an amended plea agreement to a two-level reduction, bringing Petitioner's guidelines down from 235 months to 188 months and that the parties jointly recommended a sentence of 198 months to Judge Varlan—the lowest end of the guideline range—saving Petitioner two levels of guideline time. Attorney Cravens confirmed that given the charge involved oxycodone under 21 U.S.C. § 841(b)(1)(C), there was no mandatory minimum in Petitioner's case and that absent the amended plea agreement, Petitioner's guideline range was "a very, very high range."

Attorney Cravens testified that she did not recall having any discussions with Petitioner about filing an appeal at the sentencing hearing or afterwards. The only discussions she recalled having with Petitioner about an appeal occurred prior to sentencing during her review with him of the Plea Agreement and the litany that Judge Varlan would provide. Attorney Cravens stated that the appeal waiver is an unfortunate provision in the standard plea agreement. AUSA Stone asked Attorney Cravens to assume Petitioner mentioned filing an appeal, and then asked about her practice in advising on appellate waivers under the standard plea agreement. Attorney Cravens responded as follows:

> It's my practice to advise that an appeal is limited under the waiver except under the circumstances stated in that document, and that if you would wish to file an appeal, it's consistent with what the judge advises at the litany, that your rights have been waived, other than these two circumstances, and if you wish to file an appeal, you have 14 days to do so, and direct them to the clerk if I'm not in a position – if it's an appeal for some reason other than these two reasons.

Attorney Cravens testified that she is not aware of any appealable issues in Petitioner's case. She stated that if a defendant pressed about filing an appeal of a conviction or sentence despite the waiver, as a general rule, she does not pass judgment on whether an appeal is frivolous, but she

14

decides whether she wishes to participate. If she does not wish to participate, she directs clients to the clerk's office.

On cross examination, Attorney Cravens stated that while not recalling any specific conversations, she was certain she and Petitioner had a conversation at counsel table after the sentencing hearing because she always speaks to her clients about the results of the hearing. Attorney Cravens did not recall having met with Petitioner after the sentencing hearing other than at counsel's table.

Attorney Cravens acknowledged that Petitioner's brother and sister attended the sentencing hearing. She stated that they sat in the seats behind defense counsel's table but did not recall whether they sat in the front row of the gallery or elsewhere, noting that in that particular courtroom, there is quite a bit of distance between the gallery and counsel's table. Attorney Cravens talked to them after the sentencing hearing, but she was not sure where that conversation took place (at the courtroom bar railing or hallway). She did not recall discussing Petitioner's appellate rights with his family. In response to questioning, Attorney Cravens explained that she typically handles the criminal appeals of her cases and that she is familiar with that process. She testified that she has always filed a notice of appeal if directed to do so. Attorney Cravens specifically testified that she would have recalled if Petitioner directed her to file an appeal "because that would be a significant unusual circumstance, and there were lots of unusual circumstances about [Petitioner]." She further testified that she does not recall Petitioner saying anything about wanting to appeal but had it been said, she would have recalled him stating so.

On further redirect examination, Attorney Cravens testified that even if a client directed her to file a frivolous appeal or an appeal in violation of the plea agreement, it is her practice to do so and then withdraw after filing the notice of appeal. She testified that she would have absolutely filed a notice of appeal if Petitioner had instructed her to do so.

15

### III.    ANALYSIS

In pertinent part, 28 U.S.C. § 2255(a) permits a prisoner serving a sentence after conviction in a federal court to move the court that imposed the sentence to vacate, correct, or set aside the sentence, if "the sentence was imposed in violation of the Constitution."   In order to obtain relief for an alleged constitutional error, the record must reflect a constitutional error of such magnitude that it "had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).  The burden is on the petitioner to establish the claims arising out of the petition. *Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977).

As mentioned above, the Sixth Circuit directed the Court to conduct an evidentiary hearing to determine whether Petitioner's counsel was ineffective for failing to file a notice of appeal as instructed or to consult with him regarding an appeal.  When the alleged constitutional error is ineffective assistance of counsel, the petitioner must satisfy a two-prong test. *Roe v. Flores-Ortega*, 528 U.S. 470, 476–477 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1987)).  That is, the petitioner must:  (1) establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *Strickland,* 466 U.S. at 687, as measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005); and (2) demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694.

In the context of an appeal, "it is 'professionally unreasonable' for a lawyer to fail to file an appeal when specifically instructed to do so." *Regalado v. United States*, 334 F.3d 520, 524 (6th Cir. 2003) (quoting *Flores-Ortega*, 528 U.S. at 477).  In *Flores-Ortega*, the Supreme Court held that an attorney's failure to perfect a direct appeal upon his client's request is a per se

16

Sixth Amendment violation. 528 U.S. at 477. Therefore, if counsel fails to file a direct appeal upon request, a defendant is entitled to a delayed appeal without having to show any likelihood of success on the merits. *Id.*; *see Regalado*, 334 F.3d at 525. The Supreme Court in *Flores-Ortega* set forth a framework for analyzing these claims. First, the court must determine whether the defendant gave counsel express instructions regarding an appeal. *Flores-Ortega*, 528 U.S. at 477. Second, the court must determine whether counsel consulted with defendant about an appeal. *Id.* at 478; *see also United States v. Ford*, No. 5:18-CR-156-DCR, 2021 WL 1921017, at *5 (E.D. Ky. Mar. 23, 2021) (discussing the *Flores-Ortega* analysis), *report and recommendation adopted*, No. CR 5:18-156-DCR, 2021 WL 1535363 (E.D. Ky. Apr. 19, 2021). "Whether or not counsel met his obligation to consult with his client depends on the totality of the circumstances." *Ford*, 2021 WL 1921017, at *5 (citation omitted).

The Court has considered the June 8 evidentiary hearing testimony, the documents and transcripts filed in Petitioner's criminal case, and the parties' arguments. As an initial matter, the Court observes that Petitioner signed the Plea Agreement, waiving his right to a direct appeal with the exception of appealing a sentence above the guideline range or mandatory minimum as set forth in paragraph 10(a). While Petitioner maintains that Attorney Cravens never reviewed the paragraph 10(a) appeal waiver provision with him, the Court does not find this to be credible. In Attorney Craven's testimony, she specifically detailed that in accordance with her standard practice, she read the entire Plea Agreement to Petitioner and reviewed Judge Varlan's litany with Petitioner prior to his change of plea hearing, which also included a review of the appeal waiver provision. The Court finds no indication that Attorney Cravens was less than fully credible when providing her testimony. In so finding, the Court further notes that the transcript of the December 21, 2015 change of plea hearing, reflects that Judge Varlan reviewed paragraph 10(a) in detail with Petitioner and that Petitioner affirmatively stated he understood, not only that the Plea Agreement

17

contained the appeal waiver provision, but also that he understood the limited exception to the direct appeal waiver. Petitioner's statements that Attorney Cravens never reviewed the appeal waiver provision with him is contradicted by a credible version of events outlined by Attorney Cravens as well as the hearing transcript.

The Court now turns to the analysis outlined in *Flores-Ortega*. The first prong in the analysis is whether defendant gave counsel an express directive to file an appeal. On this point, Petitioner and Attorney Cravens offered conflicting testimony. Petitioner testified that immediately following his sentencing hearing, he told Attorney Cravens at counsel table that he wanted to appeal and that she responded that he could not appeal because he had signed away his appeal rights. Petitioner claims he was dumbfounded by her response as he thought everything was appealable.

By contrast, Attorney Cravens offered a reasonable explanation of why the parties amended the Plea Agreement on the day of the sentencing hearing—saving Petitioner two levels of guideline time—resulting in a joint sentencing recommendation of 198 months, which Judge Varlan accepted. She testified that she would have certainly had a conversation with Petitioner at the counsel table immediately following the sentencing hearing, explaining that she always spoke afterwards with her clients about the results of the hearing. Attorney Cravens did not recall having a discussion with Petitioner about filing an appeal at the sentencing hearing or afterwards, and while she remembered speaking with Petitioner's family after the hearing, she did not recall any discussion of Petitioner's appellate rights.

Attorney Cravens also gave an accounting of how she handles criminal appeals of her cases, specifically noting that if a defendant pressed about filing an appeal of a conviction or sentence despite the waiver, she does not pass judgment on whether an appeal is frivolous, but she decides whether she wishes to participate by filing the notice of appeal, or if she does not wish to

18

participate, she directs clients to the clerk's office. In any event, she affirmatively testified that she has always filed a notice of appeal if directed to do so. In terms of this specific case, Attorney Cravens testified that she does not recall Petitioner saying anything about wanting to appeal, adding that there were unusual circumstances about Petitioner such that she would have recalled if Petitioner directed her to file an appeal "because that would be a 'significant unusual circumstance.'"

The Court has also considered Marty Nix's testimony that he was sitting behind Petitioner and Attorney Cravens at the sentencing hearing and heard Petitioner tell Attorney Cravens that he wanted to appeal. Specifically, Marty Nix testified that he heard Petitioner state that he wanted to file an appeal immediately, and that Attorney Cravens responded that he could not appeal, Petitioner signed his rights away, and "it's a done deal." As Attorney Cravens testified, there is quite a bit of distance between the gallery and counsel's table, and the Court notes its familiarity with the courtroom in which Petitioner was sentenced, finding that it strains credulity that Marty Nix could clearly hear Petitioner and Attorney Cravens, especially in light of Petitioner's testimony that he and Attorney Cravens talked in "low voices."

After considering the hearing testimony, the Court again finds no indication that Attorney Cravens was less than fully credible. On the other hand, the Court finds that the testimony of Petitioner and Marty Nix to be less so. In so finding, the Court places emphasis on the detail provided by Attorney Cravens regarding her years of federal practice and handling of appeals in her criminal cases, and her specific recollection of Petitioner and his unusual circumstances that would have caused her to recall if he had directed her to file an appeal. In addition, while Petitioner stated that he was dumbfounded by Attorney Cravens response to his request to appeal, he made no mention of any further discussions between him and Attorney Cravens other than the purported two sentence exchange. The Court furthers considers that Petitioner denied ever being told about

19

the appeal waiver at any time, which the Court has found not credible when weighed against Attorney Craven's testimony that she read and reviewed the Plea Agreement, including the paragraph 10(a) appeal waiver. Moreover, the Court takes into account that during the change of plea hearing, Judge Varlan discussed paragraph 10 with Petitioner and separately addressed each section in paragraph 10 [Doc. 22-1 pp. 12–13]. In response to questioning by Judge Varlan, Petitioner testified that he understood each section [*Id*.]. Additionally, during his sentencing hearing, Petitioner testified that he had ample opportunity to discuss the Amended Plea Agreement with Attorney Cravens, which maintained the paragraph 10 appeal waiver provision. [*Id*. at 5]. The record clearly demonstrates that Petitioner's testimony at his change of plea hearing and at his sentencing hearing is inconsistent with his testimony at the evidentiary hearing on June 8, 2022. The only evidence Petitioner offers other than his own contention that he told Attorney Cravens that he wanted to appeal is the testimony of his brother, which the Court finds lacking in credibility for the reasons previously stated.

Here, the Plea Agreement signed by Petitioner containing the paragraph 10(a) waiver provision is evidence that he and Attorney Cravens discussed an appeal and at that time he did not wish to file one. At the evidentiary hearing, the Court found no credible evidence that Petitioner directed Attorney Cravens to file an appeal following his sentencing hearing. As the Court finds Petitioner's testimony is less credible than Attorney Craven's, it therefore cannot find that Petitioner directed or specifically instructed Attorney Cravens to file an appeal. *Christopher v. United States*, 831 F.3d 737, 739 (6th Cir. 2016) ("In he-said, he-said cases . . . the factfinder does not clearly err in picking one 'he' over the other so long as there is support for each account."); *see also Walker v. United States*, Case No. 2:13-cr-20827, 2018 WL 10397093, at *3 (E.D. Mich. Feb. 22, 2018) (where a district court orders an evidentiary hearing regarding a § 2255 motion, the district judge—serving as the factfinder—is in the best position to gauge a defendant's credibility

20

and is entitled to make a credibility determination where there is evidence to support both views of the facts).

Finding there was no explicit instruction to appeal, the Court turns to the second prong of the analysis and considers whether Attorney Cravens consulted with Petitioner about an appeal. *Flores-Ortega*, 528 U.S. at 478. Consultation occurs when the attorney "advis[es] the defendant about the advantages and disadvantages of taking an appeal, and mak[es] a reasonable effort to discover the defendant's wishes." *Regalado*, 334 F.3d at 525 (citing *Flores-Ortega*, 528 U.S. at 478). If counsel failed to consult with the client, then the court must address whether this failure alone is indicative of deficient performance. *Id.*

As previously reviewed, Attorney Craven's testified that she read the entire Plea Agreement to Petitioner and reviewed Judge Varlan's litany with Petitioner prior to his change of plea hearing, which included a review of the appeal waiver provision. The Court has not credited Petitioner's testimony denying that he had ever been told about the appeal waiver. Therefore, from the record, the Court concludes the Attorney Cravens did consult with Petitioner about an appeal at the time he signed the Plea Agreement.

However, Petitioner also asserts that Attorney Cravens failed to make a reasonable effort to discover his desire to appeal following his sentencing, and because Petitioner claims that Attorney Cravens did not further consult with him at that time, the Court will proceed to examine whether she had a constitutionally-imposed duty to do so. As mentioned above, "If the attorney did not consult with the petitioner, the court must further inquire whether the attorney had the affirmative duty to consult." *Bolden v. United States*, No. 2:08-CR-30, 2011 WL 6291794, at *12 (E.D. Tenn. Dec. 15, 2011). "[C]ounsel only has a constitutional duty to consult when 'a rational defendant would want to appeal or when this particular defendant reasonably demonstrated to counsel that he was interested in appealing.'" *Neill v. United States*, 937 F.3d 671, 676 (6th Cir.

21

2019) (quoting *Flores-Ortega*, 528 U.S. at 480). The Court is required to "'judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct,' and 'judicial scrutiny of counsel's performance must be highly deferential.'" *Id*. (quoting *Flores-Ortega*, 528 U.S. at 477). "In the circumstance where a defendant has pleaded guilty, a court should consider such factors as whether the defendant received the sentence bargained for as part of the plea, and whether the plea expressly reserved or waived some or all appellate rights." *United States v. Brock*, No. CR 6:12-053-DCR, 2015 WL 5039244, at *10 (E.D. Ky. Aug. 24, 2015) (other citation omitted).

Petitioner asserts that not only did he express to Attorney Cravens that he wanted to file an appeal, but other facts existed at the time of sentencing that demonstrate he was interested in appealing. For example, Petitioner states that he objected to the career offender enhancement and argued that a sentence of 90 months was sufficient [Doc. 4 p. 7 (citing *United States v. Nix*, 3:15-cr-36 [Doc. 71 pp. 3–4])]. Petitioner asserts that a rational defendant would want to appeal given the 102-month difference between the requested sentence and the sentence imposed by the Court. Petitioner adds that non-frivolous grounds for an appeal existed because his conviction for aggravated burglary in Tennessee did not qualify as a "crime of violence," meaning he was not a career offender.

The Court finds that counsel's duty to consult with Petitioner about an appeal was not triggered following the sentencing hearing. The Court notes that Petitioner entered into a Plea Agreement, which was later amended, in which Petitioner agreed to plead guilty to Count I in the indictment in exchange for dismissing Counts II through VII. Attorney Cravens filed several objections to the Presentence Report, but during the sentencing hearing, she announced to the Court, "[Petitioner] has reviewed the [A]mended [P]lea [A]greement and in exchange for that recommended sentence of 198 months [Petitioner] is prepared to withdraw his objections to the

22

Presence Report." *United States v. Nix*, No. 3:15-cr-36 [Doc. 92 p. 4]. Petitioner later testified at the sentencing hearing that he agreed to withdraw all his objections to the Presentence Report [*Id*. at 7]. Judge Varlan explained that the Presentence Report stated that his guideline range was 235 months to 240 months, but because of the Amended Plea Agreement, the new guideline range was 188 months to 235 months [*Id*. at 10]. Petitioner testified that he understood, and Judge Varlan asked if he needed more time to discuss the guidelines ranges with Attorney Cravens [*Id*.]. Petitioner responded, "No. I think we have pretty much got everything figured out" [*Id*.]. The parties presented a joint recommendation for a sentence of 198 months, which was accepted by Judge Varlan [*Id*. at 11–12].

Here, while Petitioner claims that his sentence was entered over his express objections, he received the sentence that he bargained for and the Amended Plea Agreement waived his direct appeal rights with the exception of appealing a sentence above the guideline range or mandatory minimum, neither of which occurred here. Petitioner claims that he had non-frivolous grounds for an appeal because he did not qualify as a career offender, but he knowingly agreed to waive his appeal rights. During sentencing, Judge Varlan explained the basis for Petitioner's status as a career offender, and Petitioner testified that he understood. [*Id*. at 16–17]. Based on the totality of the circumstances, the Court finds that counsel's duty to consult about filing an appeal was not triggered following the sentencing hearing. *Shaw v. United States*, 498 F. Supp. 3d 944, 956 (E.D. Mich. 2020) (finding that under the totality of the circumstances, counsel's duty to consult was not triggered where petitioner pleaded guilty to one of the nine charges which lowered the guideline range, petitioner received a sentence at the lowest end of the guideline range, and petitioner expressly waived his appeal rights); *United States v. Washington*, No. 2:11–CR–20248, 2013 WL 8178395, at *11 (E.D. Mich. Sept. 5, 2013) *report and recommendation adopted*, No. 10-20202, 2014 WL 1304315 (E.D. Mich. Mar. 31, 2014) (finding that counsel was not ineffective for failing

23

to consult with defendant regarding an appeal where, among other things, the plea agreement contained an appeal waiver and the agreement was explained at the plea colloquy); *see also Flores-Ortega*, 528 U.S. at 479–80 ("[I]t would be difficult to say" that counsel's failure to consult was "professionally unreasonable" where "a sentencing court's instructions to a defendant about his appeal rights in a particular case are so clear and informative as to substitute for counsel's duty to consult.").

Lastly, the Court has considered whether the District Judge should issue a certificate of appealability on the final issue remaining in the § 2255 motion, which will be necessary for Petitioner to appeal the Court's ruling. 28 U.S.C. § 2253(a), (c)(1)(B). The Court may issue a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make this showing, the petitioner must demonstrate that reasonable jurists would find the Court's assessment of those claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court notes that Petitioner failed to provide credible evidence to support his ineffective assistance of counsel claim, relying solely on his inconsistent testimony and the testimony of Marty Nix, which the Court does not credit. The Court finds that reasonable jurists would not find that dismissal of Petitioner's claim for ineffective assistance of council is debatable or wrong. The Court therefore **RECOMMENDS** no certificate of appealability be issued to Petitioner.

## IV. CONCLUSION

For the reasons expressed herein, the Court **RECOMMENDS**[6] that the District Judge **DENY** the sole remaining claim in Petitioner's Motion to Vacate, Set Aside, or Correct Sentence

---

[6]     Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of

Pursuant to 28 U.S.C. § 2255 [**Doc. 1**] regarding Petitioner's claim that Attorney Cravens failed to file an appeal as directed or consult with Petitioner and that no certificate of appealability be issued.

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

25